FILED
2010 Apr-06  PM 04:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **DEBORAH GARDNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 5:07-CV-2206-VEH** |
| | ) | |
| **AVIAGEN, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on objections filed by Defendant Aviagen, Inc. ("Aviagen") to the magistrate judge's report and recommendation. (Doc. 34). The magistrate judge filed the report and recommendation on October 5, 2009. (Doc. 33). The magistrate judge recommended that the Motion for Summary Judgment be **GRANTED** as to as to Gardner's claims of age discrimination under both the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*., and the Alabama Age Discrimination in Employment Act ("AADEA"), Ala. Code 1975, § 25-1-20 *et seq*. (2007), and as to Gardner's claim for retaliation under the ADEA, but **DENIED** as to Gardner's claims of quid pro quo sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), as well as to her state law claims for assault and battery. The case was reassigned to the undersigned judge on October 2, 2009. (Doc. 32).

On October 19, 2009, Aviagen filed its objections to the report and recommendation. (Doc. 23). Gardner responded to Aviagen's objections on October 30, 2009. (Doc. 36). The undersigned judge held a hearing on Aviagen's objections on January 20, 2010. This matter is ripe for review.

## FINDINGS OF THE COURT

For the reasons stated herein, and after conducting a *de novo* review and considering the entire file, the court will **ADOPT** the findings and recommendations of the magistrate judge as the opinion of this court as to Gardner's Motion to Strike, to which no objections were made. Also, because no objection was raised and after conducting a *de novo* review, the court finds that there is no genuine issue of material fact and further agrees with the magistrate judge and will **ADOPT** his recommendation that Aviagen's Motion for Summary Judgment is due to be **GRANTED** as to Gardner's claims of age discrimination and retaliation under the ADEA and AADEA and **DENIED** as to Gardner's state law claims for assault and battery. Moreover, the court notes that, although Gardner's Complaint asserted a Title VII claim for hostile work environment, she voluntarily dismissed that claim when responding to Aviagen's Motion for Summary Judgment. Therefore, the court will **GRANT** Aviagen's Motion for Summary Judgment as to Gardner's Title VII hostile work environment claim. Additionally, this court has carefully considered and

2

will **SUSTAIN** Aviagen's objections to the magistrate judge's recommendation with regard to the timeliness of Gardner's Title VII claims.  Based on the undisputed facts and evidence of record, this court finds that Aviagen is entitled to summary judgment as to Gardner's Title VII claims for *quid pro quo* sexual harassment and for retaliation because Gardner failed to file a timely charge with the U.S. Equal Employment Opportunity Commission ("EEOC").  As such, Aviagen's Motion for Summary Judgment is due to be **GRANTED** as to all of Gardner's Title VII claims. By a separate Order, the report and recommendation will be **MODIFIED** in the manner stated herein.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      Factual Background[1]

---

[1] Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts.  *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party).  This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007).  Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.  This factual background is consistent with the undisputed facts of record.  It is also in keeping with the magistrate judge's report and recommendation, with the exception of the one fact to which an objection has been raised (*i.e.*, the date on which Gardner was notified of the disputed employment actions) as discussed in the "Analysis" section of this Memorandum Opinion, *infra*.

Gardner commenced this employment discrimination action against her former employer, Aviagen, on December 6, 2007. (Complaint, doc. 1). She alleges that she was the victim of sexual harassment from her supervisor, Allen Dutton. (*Id.* at ¶ 10). The alleged harassment began in April 2006 and continued until June 2006. (Gardner depo., 33:9-33:17, 36:7-36:14, 62:05-62:13; Dutton depo., 40). In either April or May of 2006, Gardner reported the sexual harassment to Dutton's supervisor, Kyle Morgenroth. (Aviagen's Brief, doc. 17, p. 8, ¶ 17 (citing Gardner depo. 37:17-38:19); Gardner's Brief, doc. 28, p. 7, ¶ 17 (admitting the fact in relevant part)). Morgenroth did not notify the Personnel Department of Gardner's complaint, and Aviagen made no investigation or took any action to protect Gardner. (Kennemer dep., doc. 18-14, 69; Kennemer dec., doc. 18-1, ¶¶ 10-11).

After she reported the harassment to Morgenroth, Gardner was disciplined twice, in writing, by Dutton. (*See* Aviagen's Brief, doc. 17, Statements of Fact Nos. 22, 27; Gardner's Brief, doc. 28, ¶¶ 22, 27 (admitted Statements of Fact Nos. 22, 27 in relevant part). She was "written up" by Dutton on June 13, 2006, for a "decline in attitude and work standards" and again on July 31, 2006, for "disruptive behavior." (Gardner Ex. 2, doc. 27-6; Gardner Ex. 21, doc. 27-20).

In February 2006, before any of the alleged sexual harassment occurred, Aviagen decided to eliminate a job in Gardner's department as a cost cutting measure.

(Kennemer dec., doc. 18-1, ¶ 18).  To avoid firing anyone at that time, Aviagen

delayed the elimination of the position until a suitable new job became available

within the company so that Aviagen could transfer the effected employee to the new

position. (Kennemer dec., doc. 18-1, ¶ 19).  When another position became available

in the Production Department during July of 2006, Aviagen's Human Resources

Director David Kennemer approved the elimination of Gardner's job.  (Kennemer

depo., doc. 18-14, 138:1-139:23; Kennemer dec., doc. 18-1, ¶ 23).

On August 1, 2006, Gardner was verbally notified by a supervisor, Assistant

Director of Hatchery Operations Richard Higgins, that her job was being eliminated.[2]

(Aviagen's Brief, doc. 17, p. 10, Statement of Fact No. 40, citing Gardner depo.,

74:9-75:18; Gardner's Brief, doc. 28, p. 13 (admitted in relevant part)).  At that time,

Higgins also told her that she must accept a transfer to a new position or her

employment would be terminated.  (*Id.*).  On August 3, 2006, Gardner received a

letter from David Kennemer which reads, in relevant part:

> Reorganization within the Egg Distribution Center and a need to
> fill a vacancy within the Production Department have required the
> Company to make some changes.  Effective August 14, 2006, you are
> being reassigned as Production Clerk in the Production Office in

---

[2] The magistrate judge found that the first date Gardner was notified of the
changes to her employment was on August 3, 2006.  This court disagrees with that
finding for the reasons set out in the "Analysis" section of this Memorandum
Opinion, *infra*.  *See also* n.1, *supra*.

Elkmont, AL.  You will be responsible for performing administrative, data entry, and clerical duties similar to those in your present position. The arrangements concerning your salary and other benefits will remain the same.

I will need your decision whether or not you accept this position not later than close of business, Monday, August 7, 2006.

(Kennemer Letter, doc. 1-5).  At some point after she received the letter, Gardner notified Aviagen that she would not accept the transfer and that she wanted to return to her old job.  (Gardner depo., 83:1-86:23).  Once Gardner refused the transfer, Aviagen terminated Gardner's employment.  (Kennemer dec., doc. 18-1, ¶ 28).

## II.    Gardner's legal claims

On January 29, 2007, several months after she was no longer employed by Aviagen, Gardner filed a charge with the EEOC.  Upon being provided with a right to sue letter, Gardner commenced the present action in this court.  (Complaint, doc. 1).  Gardner asserted the following claims in her Complaint: (1) *quid pro quo* sexual harassment, hostile work environment based on sex, and retaliation under Title VII; (2) age based discrimination and retaliation under the ADEA; (3) age based discrimination under the AADEA; and (4) state law claims for assault and battery under Alabama law.  (Complaint, doc. 1).

## III.   Aviagen's Motion for Summary Judgment and Gardner's Opposition

After the close of discovery, Aviagen filed a Motion for Summary Judgment

as to all claims asserted against it.  (Doc. 16).  In response to that motion, Gardner

voluntarily dismissed her Title VII claim for hostile work environment.  (*See*

Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment,

doc. 28, p. 3 ("Plaintiff voluntarily dismisses her hostile work environment claim

embodied in Count One of her complaint.")).  She also filed a written opposition to

the motion (doc. 28) and brought a Motion to Strike Portions of the Declaration of

David Kennemer (doc. 29).  Kennemer's declaration was submitted by Aviagen as

evidence in support of its Motion for Summary Judgment.  Both motions were

reviewed by the Hon. John E. Ott, United States Magistrate Judge for the Northern

District of Alabama.  (Doc. 33).

## IV.   The magistrate judge's report and recommendation

As noted above, the magistrate judge recommended that Gardner's Motion to

Strike be granted in part and denied in part.[3]  He further recommended that Aviagen's

Motion for Summary Judgement be granted as to Gardner's claims of age

---

[3] Specifically, the magistrate judge recommended that the Motion to Strike
be granted in part as follows: (1) paragraph 20 contains inadmissible hearsay that
cannot be offered for the truth of the matter asserted except that the statement is
admissible for the purpose of establishing that Kyle Morgenroth sent David
Kennemer a copy of Angie Urban's diary; (2) paragraph 21 is inadmissible
hearsay; and (3) paragraph 23 is due to be struck as inadmissible hearsay except to
the extent that it is admissible insofar as it "relays Kennemer's perceptions on
which he relied to approve" the elimination of Gardner's position.  (Doc. 33, pp.
14-16).

discrimination under the ADEA and AADEA and retaliation under the ADEA but denied as to Gardner's claims of *quid pro quo* sexual harassment and retaliation under Title VII as well as to her state law claims of assault and battery.  Relevant to the objections raised by Aviagen, the magistrate judge found that Gardner was notified for the first time on August 3, 2006, that Aviagen had decided to eliminate her job and that she must accept a transfer to a different position or her employment would be terminated.

## V.    Objections to the magistrate judge's report and recommendation

Gardner did not object to the magistrate judge's report and recommendation. Aviagen filed timely objections.  Specifically, Aviagen objects on the grounds that the magistrate judge: (1) incorrectly determined the date on which Gardner was notified of the changes in her employment; (2) erroneously held that Gardner filed a timely charge with the EEOC; (3) improperly concluded that Gardner's transfer was a "tangible employment action" and an "adverse employment action"; (4) erroneously found that there was evidence of pretext to support Gardner's Title VII retaliation claim; and (5) generally erred when concluding that Gardner's Title VII claims for *quid pro quo* sexual harassment and retaliation should survive summary judgment. (Aviagen's Objections; doc. 34, pp. 1-2).

Because the court finds, for reasons more fully discussed below, that Aviagen's

first and second objections are due to be sustained, the court will not consider the merits of and will overrule as moot Aviagen's third, fourth, and fifth objections.

## STANDARDS OF REVIEW

### I.   District Judge review

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify the magistrate judge's report and recommendation. *See* 28 U.S.C. § 636(b)(1); *Williams v. Wainwright*, 681 F.2d 732 (11th Cir. 1982). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990) (citation omitted). A district judge must review legal conclusions *de novo*, even in the absence of an objection. *See Cooper-Houston v. Southern Ry.*, 37 F.3d 603, 604 (11th Cir. 1994); *Castro Bobadilla v. Reno*, 826 F. Supp. 1428, 1431-32 (S.D. Fla. 1993), *aff'd* 28 F.3d 116 (11th Cir. 1994). That said, the court also acknowledges the principle that "[n]either the Constitution nor the statute requires a district judge to review, *de novo*, findings and recommendations that the parties themselves accept as correct." *United States v. Woodard*, 387 F.3d 1329, 1334 (11th Cir. 2004) (citation

9

omitted).  Moreover, absent specific objections, there is no requirement that a district judge review factual findings *de novo*.  *See Garvey v. Vaughn*, 993 F.2d 776, 779 n.9 (11th Cir. 1993) (noting that when a party "did not file specific objections to *factual findings* by the magistrate judge, there was no requirement that the district court *de novo* review those findings") (emphasis in original) (citations omitted).

## II.    Summary judgment standard of review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *See id.* at 324.

10

The substantive law will identify which facts are material and which are irrelevant. *See, e.g., Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See, e.g., Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; *i.e.* facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

11

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it requires the movant to point out to the court that there is an absence of evidence to support the non-moving party's case.  *See Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer

12

rest on mere allegations, but must set forth evidence of specific facts.  *See Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## ANALYSIS

**I.     Gardner's Title VII claims are time barred because she did not file a timely charge with the EEOC.**

    **A.     The magistrate judge found that Gardner filed a timely charge with the EEOC.**

The magistrate judge found that Gardner received notice of the adverse employment decisions at issue on August 3, 2006, and held that Gardner filed a timely charge with the EEOC on January 29, 2007.  Aviagen specifically objects to these findings.

    **B.     The parties' arguments as to timeliness**

Aviagen, in its first and second objections, argues that it is undisputed that, on August 1, 2006, Gardner received notice of the employment actions of which she complains and that the magistrate judge erred when he found that notice was not delivered until August 3, 2006.  In this case, those two days make a critical difference.  Title VII requires that a plaintiff file a charge of discrimination with the EEOC within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see also, e.g., Alexander v. Fulton County*, 207 F.3d 1303,

1332 (11th Cir. 2000) ("No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge."); *Stafford v. Muscogee County Board of Education*, 688 F.2d 1383, 1387 (11th Cir. 1982) ("In order to assert a claim of racial discrimination under Title VII, a claimant must file a complaint with the EEOC within 180 days after the alleged discriminatory practice occurred."). Failure to do so renders the Title VII claim time-barred. *See*, *e.g.*, *Delaware State College v. Ricks*, 449 U.S. 250, 256 (1980); *Everett v. Cobb County School District*, 138 F.3d 1407, 1410 (11th Cir. 1998); *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792, 796-97 (11th Cir. 1992). Gardner filed her charge with the EEOC on January 29, 2007, which is 179 days after August 3, 2006, and is 181 days after August 1, 2006.

Gardner has the burden of establishing that she filed a timely charge of discrimination. *See Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982). Gardner challenges Aviagen's objection by generally arguing that her receipt of notice of the allegedly discriminatory employment actions has no bearing on the timeliness of her charge with the EEOC. She does not cite to any authority in support of that position in her pleadings, and her attorney could not produce any case law when questioned by the court at the January 20, 2010, hearing. Gardner contends that her EEOC charge was timely filed because the last

14

discriminatory act – *i.e.*, the actual date her employment terminated – occurred within 180 days of January 29, 2007.

C.    **The court must identify the discrete discriminatory acts of which Gardner complains in order to determine when those acts occurred.**

The 180-day limitations period "begins to run from the time that the complainant knows or reasonably should know that the challenged act has occurred." *Allen v. United States Steel Corp.*, 665 F.2d 689, 692 (5th Cir. Unit B Jan. 11, 1982) (citing *McWilliams v. Escambia County School Bd.*, 658 F.2d 326, 328 & n.1 (5th Cir. Unit B Oct. 5, 1981)).[4]   Therefore, in order to determine whether Gardner's charge with the EEOC was timely, the court must identify Gardner's Title VII claims and the challenged discriminatory acts.

D.    **Gardner's remaining Title VII claims and alleged adverse employment decisions**

In the present case, as noted above, Gardner voluntarily dismissed her Title VII hostile work environment claim.  Accordingly, her remaining Title VII claims are for *quid pro quo* sexual harassment and for retaliation.  "Quid pro quo sexual harassment

---

[4] In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir. 1982), the Eleventh Circuit adopted as binding precedent all decisions of the Unit B panel of the former Fifth Circuit handed down after September 30, 1981.  Also, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

occurs if the employee's refusal to submit to a supervisor's sexual demands results in tangible employment action." *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1232 (11th Cir. 2006) (internal marks, emphasis, and citation omitted). Stated another way, "[c]ases based on threats [to retaliate against an employee who is unwilling to accept a supervisor's sexual advances] which are carried out are referred to often as *quid pro quo* cases . . . ." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 751 (1998). Similarly, a plaintiff must show an adverse employment action to demonstrate a prima facie case for retaliation under Title VII.[5] *See id.* at 1233. Thus, both of Gardner's remaining Title VII claims require that there be a tangible or adverse employment action. Because the plaintiff's burden is the same, whether the claim sounds in *quid pro quo* harassment or in retaliation, the court discusses that burden as to both claims simultaneously.

At the January 20, 2010, hearing, Gardner's attorney argued that there are three such employment actions in this case: (1) the elimination of Gardner's job; (2) the proposed transfer to a different position; and (3) the termination of Gardner's

---

[5] "[A] plaintiff alleging retaliation must first establish a prima facie case by showing that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) he established a causal link between the protected activity and the adverse action." *Bryant v. Jones*, 575 F.3d 1281, 1307-08 (11th Cir. 2009).

16

employment.[6]  For purposes of this discussion only, and viewing the facts in a light

most favorable to Gardner, this court assumes without deciding that the elimination

of her position, the proposed transfer, and the termination of her employment are

tangible and/or adverse employment actions and that they are causally linked to the

alleged sexual harassment complained of by Gardner.

> **E.**      **Because the three discrete acts occurred on August 1, 2006, and Gardner did not file her charge with the EEOC within 180 days of that date, her Title VII claims are time barred.**

Having identified the three discrete discriminatory acts of which Gardner

complains, the next step is for the court to determine the date those events occurred.

The occurrence must be within 180 days of the date Gardner filed her EEOC charge,

or the charge was untimely and Gardner's claims are time barred.  *See Ricks*, 449 U.S.

at 256.  A discrete retaliatory or discriminatory act (such as a transfer, termination,

or failure to promote) "occurred on the day that it happened."   *National Railroad*

*Passenger Corp. v. Morgan*, 536 U.S. 108, 110 (2002).  Because Gardner complains

of discrete discriminatory acts, the court can pinpoint the exact date(s) on which those

acts occurred.  "[D]iscrete discriminatory acts are not actionable if time barred . . . ."

*Id.* at 113.

---

[6] The court notes that this argument is consistent with the allegations and
claims raised in Gardner's Complaint.  (Doc. 1).

1.    **The triggering event that starts the 180-day period – *i.e.*, the day the event happened – is the date on which a plaintiff receives unequivocal notice of her employer's decision to eliminate her position, transfer her to a different job, or terminate her employment.**

"To determine the triggering of the statute, 'the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful.'" *Pearson v. Macon-Bibb County Hosp. Authority*, 952 F.2d 1274, 1279 (11th Cir. 1992) (holding that the date of the employer's notice of its intent to terminate an employee, and not the actual date of termination, was the triggering event for the 180-day filing period) (quoting *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981)) (emphasis in original).  If an employment decision constitutes a discrete discriminatory act, then the employee must receive unequivocal notice that the decision has been made by her employer in order for the 180-day period to start.  *See Wright v. AmSouth Bancorporation*, 320 F.3d 1198, 1202 (11th Cir. 2003) (the "key determination" is when the employee received "unequivocal notice" of the adverse employment action); *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1100 n.19 (11th Cir. 1996) ("the time for filing an EEOC charge begins to run when the employee receives unequivocal notice of the adverse employment decision.") (citation omitted).  In summary, and contrary to Gardner's arguments in this case, Title VII's statutory limitation period begins when <u>notice</u> of the adverse action is given, not on the date

when elimination of Gardner's job, transfer, or termination actually takes effect.  *See*

*Ricks*, 449 U.S. at 258 (holding that the 180-day period for filing an EEOC charge of

discrimination commenced on the date an adverse employment decision was made

and communicated to the plaintiff, even though one of the effects of the decision, the

eventual loss of employment, did not occur until later).[7]

---

[7] In *Mayo v. Allstate Ins. Co.*, 311 F. Supp. 2d 1329 (M.D. Ala. 2004), the United States District Court for the Middle District of Alabama summarized the notice rule as follows:

> In *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), and *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981), the United States Supreme Court set forth the general rule that the date of the notice of termination, and not the actual date of termination itself, is the operative date from which the 180-day time period begins to run. *See Chardon*, 454 U.S. at 8, 102 S.Ct. 28 ("mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination") (internal citation omitted). The Eleventh Circuit has applied this rule without exception. *See e.g.*, *Nance v. Maxwell Fed. Credit Union*, 186 F.3d 1338, 1341 (11th Cir. 1999) (the 180-day time period begins to run "at the time that the consequences of that decision are realized"); *Cocke v. Merrill Lynch*, 817 F.2d 1559, 1561 (11th Cir. 1987) ("A final decision to terminate the employee, rather than actual termination, constitutes the 'alleged unlawful practice' that triggers the filing period.") (internal citation omitted). Thus, the 180-day period is counted from the date the employee receives notice of termination.

*Mayo*, 311 F. Supp. 2d at 1333.  While *Mayo* dealt exclusively with termination, this court finds that the observations regarding the notice rule are equally applicable to an employer's unequivocal notice of any adverse employment decision that a plaintiff claims is a discrete discriminatory act.  *See Grayson v. K-*

That said, the notice and communication must be unequivocal and leave no room for doubt that the adverse employment action is imminent. *See Stewart v. Booker T. Washington Insurance*, 232 F.3d 844 (11th Cir. 2000). The *Stewart* Court reversed a district court for finding that the 180-day period began to run on the date that an employer told all employees of a radio station that the station was going to be sold and he did not know whether the employees would be retained by the new owner. The Eleventh Circuit stated as follows:

> Quite simply, the 180-day charge filing period does not run until the plaintiff is told that she is actually being terminated, not that she *might* be terminated *if* future contingencies occur. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1100 n. 19 (11th Cir. 1996) (noting that the EEOC charge filing period does not begin to run until the employee receives "unequivocal notice of the adverse employment decision."); *Pearson v. Macon-Bibb County Hosp.*, 952 F.2d 1274, 1279-80 (11th Cir. 1992) (holding that trial was necessary to determine the availability of equitable tolling when an employee was told she could resign, apply for a transfer or, if she refused those options, be terminated); *Cocke v. Merrill Lynch & Co.*, 817 F.2d 1559, 1561 (11th Cir. 1987) (holding that the charge filing period was equitably tolled when the employee's notice of termination stated that the employer was pursuing positions for the employee within the company "until such time as it is or should be apparent to an employee with a reasonably prudent regard for his rights that the employer has ceased to actively pursue such a position."); *see also Ricks*, 449 U.S. at 258, 101 S. Ct. 498 ("[T]he only alleged discrimination occurred — and the filing limitations periods therefore commenced — at the time the tenure decision was made and

---

*Mart Corp.*, 79 F.3d 1086, 1100 n.19 (11th Cir. 1996) ("the time for filing an EEOC charge begins to run when the employee receives unequivocal notice of the <u>adverse employment decision</u>.") (citation omitted) (emphasis supplied).

communicated to Ricks.").  Beginning the charge-filing period any earlier would make little sense:  to require a plaintiff to file a discriminatory termination charge with the EEOC prior to the receipt of notice of termination would be to require a filing prior to the occurrence of the discriminatory conduct, thereby charging the EEOC with responsibility for the arguably advisory task of investigating a hypothetical case of discrimination.

*Stewart*, 232 F.3d at 849 (emphasis in original).  *See also Wright v. AmSouth Bancorporation*, 320 F.3d 1198, 1203 (11th Cir. 2003) ("a plaintiff must be told that she is actually being terminated before the 180-day filing period begins to run, not that she *might* be terminated *if* future contingencies occur") (internal marks omitted) (emphasis in original).

> **2.    It is undisputed, for summary judgment purposes, that Aviagen first notified Gardner on August 1, 2006, that her job was being eliminated and that she must accept a transfer to a new position or her employment would be terminated.**

In the present case, the magistrate judge found that Gardner was first notified on August 3, 2006, of the elimination of her position, the proposed transfer, and of the fact that her employment would be terminated if she did not accept the transfer. (Report and Recommendation, doc. 33, p. 20 & n.21).  Based on that finding of fact, the magistrate judge concluded that Gardner's EEOC complaint was timely filed – 179 days after she was notified by Aviagen of the employment actions.  (*Id.*).  After a *de novo* review of the file, this court disagrees with the magistrate judge's finding

that Gardner first received notice of the employment actions on August 3, 2006.

It is undisputed by the parties, for purposes of summary judgment, that Gardner received notice of the aforementioned employment actions on August 1, 2006, or 181 days before she filed her EEOC charge.  This court's Uniform Initial Order, entered in this case on January 8, 2008, requires that

> The moving party shall list in *separately numbered paragraphs* each material fact the movant contends is true and not in genuine dispute, and upon which the moving party relies to demonstrate that it is entitled to summary judgment. Each such statement must be followed by a specific reference to those portions of the evidentiary record that the movant claims supports it.

(Doc. 7, Appendix II, p. 16) (emphasis in original).  Aviagen's brief complied with that requirement.  Under the Uniform Initial Order, the party opposing summary judgment must respond as follows:

> The first section [of the opposition brief] must consist of only the non-moving party's disputes, if any, with the moving party's claimed undisputed facts. The non-moving party's response to the moving party's claimed undisputed facts shall be in separately numbered paragraphs that coincide with those of the moving party's claimed undisputed facts. Any statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based.  *All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment.*

(Doc. 7, Appendix II, pp. 16-17) (emphasis in original).

Aviagen's "Statement of Fact" No. 40 states:

40.    On August 1, 2006, the Assistant Director of Hatchery Operations informed Plaintiff that her job was being eliminated and that she was being transferred to the Production Department as a Clerk. Gardner 74:9 - 75:18.[8]

(Doc. 17, p. 10).   Gardner's relevant response to Statement of Fact No. 40 was "Agreed."[9]  (Doc. 28, p. 13).   Therefore, pursuant to the Uniform Initial Order, the court finds that it is deemed undisputed for purposes of summary judgment that

_____

[8] In the deposition testimony cited by Aviagen in Statement of Fact No. 40, Gardner testified about the August 1, 2006, conversation as follows:

He told me that – he came to my office and told me that they were going to – my job was going to be depleted and that they had a job opening in the production office.  And I asked him if I could go back out on the floor and work, because I worked there most of the time.  And he said, no, there was not a position open on the floor.  <u>And he said either I take the job in the back or I was out the door.</u>

(Gardner depo., doc. 18-2, 75:5 - 75:15) (emphasis supplied).  Also, Aviagen's Statement of Fact No. 45 states, in relevant part: "Plaintiff was aware that if she refused to take the transfer, she would no longer have a job."  (Doc. 17, p. 14).  When responding to No. 45, Gardner "Agreed" that the fact was undisputed.  (Doc. 28, p. 17).  Accordingly, in light of Gardner's deposition testimony and the admission on the record, the court notes that it is also undisputed for summary judgment purposes that, on August 1, 2006, Gardner was informed and understood that she would no longer have a job at Aviagen if she refused to accept the transfer.  Neither party has directed the court to evidence of record to the contrary.

[9] Gardner disputes Aviagen's stated reasons for the elimination of her job and for the transfer, but she does not dispute the date on which she was informed of her employer's decision to change the conditions of her employment.  (Doc. 28, p. 13).

23

Gardner was informed on August 1, 2006, that her job was being eliminated and that she must accept a proposed transfer to a new position or her employment would be terminated.  *See Mann v. Taser International, Inc.*, 588 F.3d 1291, 1302-03 (11th Cir. 2009) (holding that a district court properly deemed facts as admitted for summary judgment purposes where a non-movant filed an opposition brief but failed to controvert the movant's statement of facts in the manner prescribed by Northern District of Georgia Local Rule 56.1(B)(2)(a)(2)).[10]

Also, Gardner's attorney conceded, during the January 20, 2010, hearing held before the undersigned judge on Aviagen's objections to the report and recommendation, that Gardner was notified of the three alleged adverse employment actions on August 1, 2006.

Accordingly, while it is true that the August 3, 2006, letter is the first <u>written</u> notice Gardner received from Aviagen that her employment situation would soon change, it is undisputed that, on August 1, 2006, Gardner was told by the Assistant Director of Hatchery Operations that her job was being eliminated and that she had to either accept the transfer to a different position or her employment would be terminated.  Neither party has cited a case, and this court has been unable to locate

---

[10] This court notes that Northern District of Georgia Rule 56.1(B)(2)(a)(2) is substantively identical to Appendix II to the Uniform Initial Order entered in this case.

one, holding that the notice must be in writing or, in the alternative, that verbal notice from a supervisor is insufficient to rise to the level of unequivocal notice. The court finds that, even when viewing the facts in a light most favorable to Gardner, she received unequivocal notice on August 1, 2006, that her job was to be eliminated, that she was being transferred to a new position within the company, and that if she refused to accept the transfer her employment would be terminated.

### 3.    The notice was unequivocal.

The court also notes that the present case is not one that is factually similar to *Stewart* or *Wright, supra* (in which the employee was not given unequivocal notice of termination). Here, it is undisputed that Gardner was told and she understood that she must accept the transfer to a new position or she would be fired. Even when the facts are viewed in a light most favorable to Gardner, Aviagen's communication to her on August 1, 2006, was unequivocal. Further, it is undisputed that Gardner, not Aviagen, made the ultimate decision not to accept the proffered position. Therefore, the facts of this case, unlike those of *Stewart* or *Wright*, do not support the application of equitable tolling.[11]

---

[11] Neither party raises the issue of equitable tolling, and it is not for this court to develop arguments that were not made by the parties. *See U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (refusing to address a party's "perfunctory and underdeveloped argument") (citing *Flanigan's Enterprises*, *Inc. v. Fulton County*, 242 F.3d 976, 987 n.16 (11th Cir. 2001)

(holding that "fail[ure] to elaborate or provide any citation of authority in support [of an argument]" results in waiver)); *Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1030 (5th Cir. Unit B Aug. 5, 1982) (generally noting that "[f]ailure to brief and argue an issue is grounds for finding that the issue has been abandoned"). Accordingly, the court will not speculate as to arguments that could have been made but that were not. Perhaps the parties did not raise the issue because they recognize, as this court does, that the doctrine of equitable tolling is not appropriate in this case.

"Equitable modification suspends a limitations period 'until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" *Cocke v. Merrill Lynch & Co., Inc.*, 817 F.2d 1559, 1561 (11th Cir. 1987) (quoting *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir. 1975)). "Equitable tolling is a type of equitable modification, which 'often focuses on the plaintiff's excusable ignorance of the limitations period and on [the] lack of prejudice to the defendant.'" *Id.* (quoting *Naton v. Bank of California*, 649 F.2d 691, 969 (9th Cir. 1981)). District courts have been cautioned against combining or confusing "the beginning moment of the 180-day period with what [the Eleventh Circuit has] said about equitably tolling the statutory filing period." *Wright v. AmSouth Bancorporation*, 320 F.3d 1198, 1202 (11th Cir. 2003).

In *Cocke*, *supra*, the Eleventh Circuit held "that while the employer is actively trying to find a position within the company for the employee, the 180-day filing period . . . is equitably tolled until such time as it is or should be apparent to an employee with a reasonably prudent regard for his rights that the employer has ceased to actively pursue such a position." 817 F.2d at 1561. The instant action is not a case where, as in *Cocke*, an employer represented to its employee that her job was being eliminated, that there <u>might</u> be another job within the company at some point prior to the imminent elimination, that the employer would make every effort to relocate the employee, and, on the day of termination, the employer came up short. *See* 817 F.2d at 1560. In *Cocke*, unlike this case, there was not an open position for the plaintiff to accept or refuse as an alternative to termination. There was only the employer's representation that it would attempt to find a new job within the company for the plaintiff. The employer held all the cards in *Cocke*. In contrast, Gardner held all the cards in this case. Gardner was

4.      **Conclusion**

Because Gardner received unequivocal notice, on August 1, 2006, of the adverse employment decisions that form the basis of her remaining Title VII claims for *quid pro quo* harassment and retaliation, and she filed her charge with the EEOC on January 29, 2007, Gardner filed the charge 181 days after the date on which she was notified by Aviagen that her employment situation would change.  Also, neither of Gardner's Title VII claims are premised on events that occurred within 180 days of the date she filed her charge with the EEOC.  As such, the court finds that Gardner's Title VII claims are time barred because she failed to file a charge with the EEOC within 180 days from the last alleged discriminatory act, *i.e.*, the date Gardner received unequivocal notice of the elimination of her position and that she must either accept a transfer to a new position or her employment would be terminated.  *See* 42

---

informed by Aviagen, on August 1, 2006, that her job was being eliminated and that there was a real, available position that she could transfer into.  Unlike the plaintiff in *Cocke*, Gardner was actually offered a replacement job.  Upon receiving that offer, it was Gardner's decision whether to accept the transfer or to allow her employment to be terminated.  Whereas under the facts of *Cocke* it strained the boundaries of the law for a court to expect an employee to sue an employer while the employer was trying to place the employee in another job that did not yet exist, *see* 817 F.2d at 1561-62, tolling the 180-day filing period in the instant action would lead to an inequitable result if the court were to hold that Gardner, through her own action or inaction, could manipulate the statutorily prescribed time within which she could file her EEOC charge.  As such, the court finds that, even had the issue been raised by a party, equitable tolling is not appropriate in this instance.

U.S.C. § 2000e-5(e)(1).  Therefore, Aviagen is entitled to summary judgment as to both of Gardner's remaining Title VII claims.  Aviagen's first and second objections to the magistrate judge's report and recommendation will be **SUSTAINED** and the report and recommendation will be modified accordingly.

## II.   Gardner's State Law Claims[12]

Gardner's Complaint also contains state law claims that sound in tort.  This does not present a jurisdictional problem because, in cases such as this one where the district court's jurisdiction was originally based upon the presence of a federal question, the court also possesses the discretion to entertain state claims that are so related to the federal causes of action that they form a part of the same case or controversy under Article III of the United States Constitution.  *See* 28 U.S.C. § 1367(a).[13]  The district court may, however, decline to exercise supplemental

_____

[12] Neither party objected to the magistrate judge's recommendation that Aviagen's Motion for Summary Judgment be denied as to Gardner's state law claims of assault and battery.

[13] In full, this statutory subsection provides that:

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include

jurisdiction when:

> (1)    the claim raises a novel or complex issue of State law,
>
> (2)    the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3)    the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4)    in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  The Supreme Court added a gloss to this statutory language in

*Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988), when observing that

> a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendant [now called "supplemental"] state-law claims.

*Id*. at 349-50 (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-27

(1966)).

"[I]n the usual case in which all federal-law claims are eliminated before trial,

the balance of factors to be considered under the pendent [now supplemental]

jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will

---

claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).

point toward declining to exercise jurisdiction over the remaining state-law claims."

*Carnegie-Mellon*, 484 U.S. at 350 n.7.

Here, by the Order entered contemporaneously with this Memorandum Opinion, the court has entered final summary judgment on all federal claims over which it had original jurisdiction. This case, although only recently reassigned to the undersigned, has been pending for over three years. Procedurally, all that is left for this court to do is to conduct a trial as to Gardner's assault and battery claims, which survived summary judgment. Also, while Gardner's claims for assault and battery are not run-of-the-mill in that they are brought against the alleged tortfeasor's employer (and not the alleged tortfeasor himself), the court finds that the issues of state law are not so novel or complex as to weigh against a trial in a federal court. Therefore, for the foregoing reasons, the court finds that the interests of justice, judicial economy, convenience, fairness, and comity are best served if this court exercises supplemental jurisdiction over Gardner's claims for assault and battery brought against Aviagen.

Accordingly, a final pretrial conference will be scheduled by a separate Order.

## <u>CONCLUSION</u>

A written order will be entered consistent with this Memorandum Opinion.

**DONE** this the 6th day of April, 2010.

_(signature)_

**VIRGINIA EMERSON HOPKINS**
United States District Judge